13 P.3d 324

**STATE of Hawai'i, Plaintiff–Appellee.**

v.

**Lovisa RAUCH, Defendant–Appellant.**

No. 23076.

Supreme Court of Hawai'i.

Dec. 6, 2000.

Dana S. Ishibashi, on the briefs, Honolulu, for the defendant-appellant, Lovisa Rauch.

Donn Fudo (Deputy Prosecuting Attorney), on the briefs, for the plaintiff-appellee, State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ, and Intermediate Court of Appeals Judge Foley, in Place of ACOBA, J., Recused.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Lovisa Rauch appeals from the first circuit court's amended judgment of conviction of and sentence for the offense of reckless manslaughter, in violation of Hawai'i Revised Statutes (HRS) § 707–702 (1993 & Supp.1999),[1] filed on September 22, 1999. Rauch's points of error on appeal are: (1) that the family court of the first circuit erred in waiving jurisdiction over her because it (a) misconstrued HRS § 571–22(d) (1993 & Supp.1998)[2] to mandate waiver and (b) violated principles of double jeopardy;[3] and (2) that the first circuit court erred

---

1. HRS § 707–702 provides in relevant part:
   (1) A person commits the offense of manslaughter if:
   (a) He [or she] recklessly causes the death of another person[.]
   ....
   ....
   (3) Manslaughter is a class A felony.

2. HRS § 571–22(d) provided in relevant part as follows:
   (d) The [family] court may waive jurisdiction and order a minor or adult held for criminal proceedings if, incident to a hearing, the court finds that:
   (1) The person during the person's minority is alleged to have committed an act that would constitute murder in the first degree or second degree or attempted murder in the

first degree or second degree if committed by an adult; and
(2) There is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill.
In 1999, the legislature amended HRS § 571–22(d), replacing the clause, "incident to a hearing," with, "after a full investigation and hearing." See HRS § 571–22(d) (Supp.1999).

3. Article 1, section 10 of the Hawai'i Constitution (1978) provides in relevant part that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy." The fifth amendment to the United States Constitution provides in relevant part that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb[.]"

in sentencing her because it (a) did not apply time served credit for house arrest presentence detention, pursuant to HRS § 706–623(2) (1993), *see infra* section III.B.1, and (b) did not make sufficient findings under HRS § 706–606(2) (1993), *see infra* section III.B.2, to support incarceration. Finding no merit in Rauch's points of error, we affirm her conviction and sentence.

## I. *BACKGROUND*

On August 17, 1998, Rauch was accused by petition filed in family court of committing an act that, if committed by an adult, would constitute second degree murder, in violation of HRS §§ 707–701.5 (1993) and 706–656 (1993 & Supp.1999). After conducting a hearing on the petition, the family court waived jurisdiction over Rauch and bound her over to be tried as an adult in the first circuit court. Rauch was indicted on October 20, 1998. She subsequently pled no contest to reckless manslaughter, *see supra* note 1, and was sentenced to probation for a term of ten years, subject to the special condition, *inter alia*, of one year of incarceration.

Just over a month shy of her seventeenth birthday, Rauch, on August 13, 1998, was involved in an altercation between her family and their neighbors, the Alameida family. Her family had recently moved into the neighborhood. Her father, Perry Rauch, was a commercial fisherman. The Alameida family were apparently displeased with the increase in vehicular traffic in the neighborhood, which they attributed to Perry's fishery.

On August 13, 1998, Perry delivered some fish to a neighbor, and, while at the neighbor's house, complained about someone who had painted on the gate to his property. Clayton Alameida, who was also at the neighbor's house, overheard Perry's complaints, became verbally abusive, told Perry to leave, and challenged him to fisticuffs. Clayton was intoxicated at the time, but to what degree remains uncertain. Perry used the neighbor's telephone, called his wife, and requested her to bring him a baseball bat. She

did so, opting to drive over in their automobile. Once there, Clayton assaulted her, knocking her to the ground at least twice. Rauch, who had walked over to the neighbor's house, observed Clayton's assault on her mother. Both families continued to taunt and threaten each other as the Rauches retreated to their own property. The Alameida family, however, followed them.[4]

On the Rauches' property, Clayton continued to taunt Perry, chasing him around (although Perry still held the bat), and, apparently, wielding or throwing iron bars at him. At some point, Rauch left the front lawn in search of her father's .22 caliber rifle, which she eventually found in his boat. Rauch returned and attempted to dissuade Clayton from continuing his attack on her parents by aiming the rifle at him. The rifle discharged. Clayton's grandmother, Julia Alameida, who was sixty-two years old at the time, was struck in the forehead by the bullet and died as a result.

Rauch and the prosecution stipulated to the following facts at the hearing conducted with regard to the prosecution's waiver petition:

> One, the minor, Lovisa Rauch, was born on September 23, 1981; two, Lovisa Rauch was 16 years old at the time of the alleged offense[,] which was on August 13th to 14th, 1998; three, the alleged offense would constitute a felony if committed by an adult; four, that during her minority, Lovisa Rauch is alleged to have committed an act that would constitute murder in the second degree if committed by an adult; five, Lovisa Rauch is not committable to an institution for the mentally defective or retarded or the mentally ill.

Without objection, the family court also admitted into evidence the police report concerning the present matter and the report of Dr. Gary M. Farkas, filed in the family court on September 8, 1998.

Called by the prosecution, Gary Farkas, Ph.D., a "self-employed clinical psychologist" who is also employed part-time by the State

---

**4.** It is unclear how many of the Alameida clan were involved in the incident; however, at least Clayton and his father were active participants, and, by the time Clayton's grandmother was shot, several other Alameidas were present.

of Hawai'i Courts and Corrections Division, testified that, after meeting with Rauch on September 1, 1998, he did not detect "any significant mental health indicators in her," that "there was no evidence that she had a psychotic disorder, a depressive disorder, [or] an anxiety disorder," and, indeed, that she had "no diagnosable [mental] conditions." On cross-examination, Dr. Farkas testified that his conclusion was that Rauch was not committable to an institution for the mentally ill.

Called by the defense, Barry S. Carlton, M.D., an associate professor of psychiatry at the University of Hawai'i John A. Burns School of Medicine, testified that he also met with Rauch and that, pursuant to his request, Queen's Medical Center conducted standard psychological testing of her. Dr. Carlton similarly concluded that Rauch was not committable. He also testified that Rauch was able to understand "what has happened to her, the charges that have [been] brought, and participate in her . . . defense."

The defense also called Rauch's father, Perry. Perry testified that, to his knowledge, Rauch had not "caused any problems or difficulties at school" or at home. Lovelyn Mapona Kekino, Rauch's mother, testified similarly but acknowledged that Rauch did have some trouble abiding by the school's dress code. Lovelyn also acknowledged that

Rauch had been referred to the family court once before, on the accusation of committing theft in the fourth degree. Lovelyn testified that neither Rauch nor her friends used drugs. The family court also heard testimony from Rauch's brother, Dane Kekino Rauch, and Jasmine Marie Kaalakahealani Pullman, a friend of Rauch's, who had gathered letters of support from other schoolmates.

The prosecution urged the family court to waive its jurisdiction over Rauch under either HRS § 571–22(a) (1993 & Supp.1998),[5] or, alternatively, under HRS § 571–22(d), see supra note 2. Under HRS § 571–22(a), the prosecution argued: (1) that Rauch was not committable to an institution for the mentally ill and, therefore, was not in need of treatment; and (2) that, based on the severity of the alleged offense, the safety of the community required that Rauch be subject to "judicial restraint" for a period beyond her minority. Under HRS § 571–22(d), the prosecution again noted that Rauch was accused of committing second degree murder and that there was no evidence that she was committable to a mental institution; these were facts stipulated to by the parties.

Rauch argued that the factors set forth in HRS § 571–22(c) (1993 & Supp.1999)[6]

5. HRS § 571–22(a) provides as follows:
   The [family] court may waive jurisdiction and order a minor or adult held for criminal proceedings after full investigation and hearing where the person during the person's minority, but on or after the person's sixteenth birthday, is alleged to have committed an act that would constitute a felony if committed by an adult, and the court finds that:
   (1) There is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill;
   (2) The person is not treatable in any available institution or facility within the State designed for the care and treatment of children; or
   (3) The safety of the community requires that the person be subject to judicial restraint for a period extending beyond the person's minority.

6. HRS § 571–22(c) provides as follows:
   The factors to be considered in deciding whether jurisdiction should be waived under subsection (a) or (b) are as follows:
   (1) The seriousness of the alleged offense;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The desirability of trial and disposition of the entire offense in one court when the minor's associates in the alleged offense are adults who will be charged with a crime;
(5) The sophistication and maturity of the minor as determined by consideration of the minor's home, environmental situation, emotional attitude, and pattern of living;
(6) The record and previous history of the minor, including previous contacts with the family court, other law enforcement agencies, courts in other jurisdictions, prior periods of probation to the family court, or prior commitments to juvenile institutions;
(7) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the minor (if the minor is found to have committed the alleged offense)

weighed against granting the prosecution's petition, inasmuch as: "there is no history or pattern of law-violating behavior; she has no history or pattern of assaultive, aggressive, or violent type of behavior; she has never been a behavior problem at home, at school, or in the community; she comes from a close-knit family, has [a] strong support system in ... her parents and siblings[;] ... that her overall functioning is stable; [and] that if she is in need of services and/or treatment, she is treatable under the family court system given her age."

In rebuttal, the prosecution argued that, "as far as waiver under [HRS § ] 571–22(d)" was concerned, and given the severity of the accusation, the "only issue" was "whether or not [Rauch was] committable."

The family court ruled as follows:

All right. The court finds that the respondent is a minor under the age of 18; that the incident which led to the charge in this case occurred while the minor was 16 years of age; and that the act constitutes a felony if committed by an adult; and, further, that the minor is not committable to an institution for the mentally defective or retarded or mentally ill.

Normally, under section 571–22, the court would go through the criteria with regard to waiver. But the legislature, in enacting Act 318 last year during the 1977[sic] legislative session, amended the statute by adding subsection (d) and giving a clear policy indication that in a case where the alleged act constitutes murder in the second degree and, in this case, in having reviewed the entire police report, appears there is probable cause for that charge and, secondly, that there is no evidence in this case that the minor is committable. And following the legislature's policy decision, the court is granting the [prosecution's] request for a waiver.

Later that afternoon, the family court heard arguments on Rauch's motion for reconsideration. Rauch argued she had no notice that the prosecution would be relying on HRS § 571–22(d), and, thus, the family

by the use of procedures, services, and facilities currently available to the family court; and

court's reliance on that subsection denied her due process. Rauch also argued that, in any event, the family court misconstrued the legislative intent of HRS § 571–22(d), inasmuch as the court was not required, upon making the findings set forth in HRS § 571–22(d), to waive its jurisdiction. Moreover, Rauch contended that, to properly exercise its discretion under HRS § 571–22(d), the family court "would have to use the factors" enumerated in HRS § 571–22(c), which the family court expressly did not do. And, finally, Rauch argued that the family court erred in finding that "probable cause" for the charges existed, citing *In re John Doe, Born November 12, 1958,* 61 Haw. 48, 594 P.2d 1084 (1979).

The family court denied Rauch's motion for reconsideration, ruling as follows:

All right, the court is well aware of *In re Doe*. And as it indicates in that particular case, it says that the allegations are presumed true, all right. And it also says in [HRS § ] 571–22 that the court will make a full investigation, and that's what the court did, took a look at all of the facts in the case, and it's not making a finding—a judicial finding of probable cause. But it appears that there was [a] sufficient basis to—to make that charge. As the Prosecutor's Office knows, in another case in which they made a charge, the court, looking at the—at the facts in the case, did not find that there was sufficient probable cause for the charge and, therefore, did not make a waiver, okay. So the court is well aware of *In re Doe*. But it had to satisfy itself that the charge made is a—is a right charge, okay. And in that respect, that's the comment that the court made with regard to probable cause.

As to the issue of the—the criteria, it is absolutely clear from the language and the amendments made by the legislature that the criteria set forth in subparagraph (c) of [HRS § ] 571–22 applies only to (a) and (b) above and that subsection (d) is a new section wherein waiver can be granted where there is a very serious charge. And in this case, there is a very serious charge

(8) Any other relevant matters.

in which a person's life has expired. Okay. And the court is well aware that is says ["]may,["] that I think that the offense is serious enough to render a waiver. And therefore, the motion for reconsideration is denied.

At sentencing, the prosecution requested, among other things, that Rauch be sentenced to eight years' incarceration. After reviewing the facts of "this tragic incident," the circuit court expressly considered Rauch's lack of prior criminal history, her "prosocial lifestyle," and the "strong support" she had from friends and family. The circuit court noted that she did not abuse alcohol or drugs, that she expressed remorse, and that she "has adjusted well in the community." The circuit court also observed that, although her judgment was "poor," it "was colored by the situation and also her youth." The circuit court further remarked:

> I've considered the youthful offender provision as recommended by the prosecution. I believe that youthful offender is too harsh under the circumstances surrounding the offense, her history, and her character[,] and especially the conclusion that she's likely to affirmatively respond to probation. The other concern is that, unfortunately, our prisons are overcrowded, and I do not believe, from what I've seen, that the Department of Public Safety has been in the position to implement the legislative intent, to provide the type of care and training contemplated in a youthful offender sentencing. Basically, they just

end up incarcerated. On the other hand, the court cannot ignore the fact that a life has been lost.

> I've looked at the factors indicated in [HRS § ] 706-621 [ (1993) [7]].

"Considering those factors along with all of the statutory factors," the circuit court sentenced Rauch to ten years' probation, subject to the special condition, *inter alia*, of one year of incarceration.

Rauch requested "that the court consider that the days that she was under house arrest and restricted to her residence be considered as incarceration for the purpose of probation." *See* HRS § 706-623(2), quoted *infra* section III.B.1. The circuit court denied Rauch's request for credit for time so served and remarked, "I don't think that the statute contemplates house arrest pretrial detention is incarceration in accordance with the law for purposes of presentence detention."

Rauch subsequently moved for reconsideration of her sentence. She argued that the circuit court erred in not considering the factors set forth in HRS §§ 706-606(2)(c) and 706-606(2)(d), *see infra* section III.B.2, respectively, which, in any event, had no support in the record. As to the house arrest issue, Rauch argued that the circuit court "create[d]" an "institution" by its order placing Rauch under house arrest and, therefore, house arrest fell within the ambit of HRS § 706-623(2). Rauch also argued that the conditions imposed on her house arrest

---

**7.** HRS § 706-621 provides in relevant part as follows:

> The court, in determining whether to impose a term of probation, shall consider:
> (1) The factors set forth in [HRS § ] 706-606 to the extent that they are applicable;
> (2) The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:
> (a) The defendant's criminal conduct neither caused nor threatened serious harm;
> (b) The defendant acted under a strong provocation;
> (c) There were substantial grounds tending *to excuse or justify the defendant's criminal* conduct, though failing to establish a defense;
> (d) The victim of the defendant's criminal conduct induced or facilitated its commission;

> (e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
> (f) The defendant's criminal conduct was the result of circumstances unlikely to recur;
> (g) The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;
> (h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both; [and]
> (i) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependants[.]

were similar enough to being imprisoned that, in her case, she should be given credit for time served under house arrest.

The circuit court denied Rauch's motion for reconsideration of her sentence. The circuit court reiterated that, in sentencing her, it did consider "all of the relevant statutory factors." The circuit court further clarified the reasons it incarcerated her:

These incidents are unfortunate, but there is a community interest in terms of incarceration in this case. There's too much abuse of firearms in the community. There's too much violence in this community. Presently in the First Circuit we have 12 murder cases pending trial. We've had recent incidents involving the use or abuse of firearms in the community.

In this case here, what impressed the Court was that th[ere] was an alternative available to the defendant, and that was to seek law enforcement assistance as opposed to getting the firearm which was used in this case, unfortunately resulting in the death of another.

The other thing that supports some incarceration in this case is that the Court noted in the presentence diagnosis and report that this was not the defendant's first contact with the criminal justice system. Albeit, while a minor involved in a property offense, it does—it did indicate that there was a certain character deficiency which may lead to criminal conduct in the future. So the Court believes that the sentence that it imposed was just under the totality of the circumstances considering the interest of the community, the interest of the family members of the decedent, as well as the interest of the defendant and her family members.

In connection with Rauch's reassertion that house arrest should qualify as credit for time served, the circuit court ruled as follows:

In terms of presentence detention credit, ordinarily that is a matter of legislative mandate and not—I'm not seeing constitutionally how house detention may not be a subject of a—of a credit. However, I believe that under the Constitution, it must be so restrictive as to be strongly similar, if not identical, to incarceration in a correctional facility.

In this case, I don't think it was onerous. Although there was house detention, the defendant had 24-hour access to her family members, she could receive visitors on a 24-hour basis, with the Court's permission she could leave. There's no provision in statute or in law if she were to not—not comply that she would be subject to a—a charge of—of escape, so I don't think it was that onerous.

Rauch has timely appealed.

## II. STANDARDS OF REVIEW

### A. Waiver Of Jurisdiction

The standard of review of a Family Court waiver decision is whether there was an abuse or mistaken exercise of discretion. *State v. Stanley*, [60 Haw. 527, 538, 592 P.2d 422, 429 (1979) ]. Otherwise phrased, the question is not whether the reviewing court agrees with the court below, but rather whether it believes that the judicial mind in view of the relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the·conclusion of which complaint is made.
*State v. Tominaga*, 45 Haw. 604, 614, 372 P.2d 356, 362 (1962).

Much discretion is placed in the hands of the Family Court judges in deciding whether a child is an unfit subject for rehabilitation under facilities and programs available to the Family Court but that discretion must be exercised within the bounds of due process. . . . Due process in the waiver context is not, however, limited only to procedural regularity[,] that is, a hearing, assistance of counsel[,] and a statement of reasons supporting the decision. There must also be substantial evidence upon which to base the decision to waive the child. *See, In the Matter of F.S.*, 586 P.2d 607 (Alaska 1978); *State v. Green*, 218 Kan. 438, 544 P.2d 356 (1975). "Substantial evidence" is "credible evidence which is of sufficient quantity and probative value to justify a reasonable [person] in reaching a conclusion." *Shoe-*

maker v. Takai, 57 Haw. 599, 561 P.2d 1286 (1977).

In re John Doe, 61 Haw. 364, 366–67, 604 P.2d 276, 277–78 (1979) (some citations omitted). See also In re John Doe, 61 Haw. 561, 606 P.2d 1326 (1980) (reviewing family court's waiver of jurisdiction for abuse of discretion); In re John Doe, 1 Haw.App. 301, 618 P.2d 1150 (1980) (same).

B. *Sentencing*

[A] sentencing judge generally has broad discretion in imposing a sentence. State v. Gaylord, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); State v. Valera, 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Gaylord, 78 Hawai'i at 144, 890 P.2d at 1184; State v. Kumukau, 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); State v. Murray [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); State v. Fry, 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

Keawe v. State, 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." Fry, 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " Keawe, 79 Hawai'i at 284, 901 P.2d at 484 (quoting Gaylord, 78 Hawai'i at 144, 890 P.2d at 1184 (quoting Kumukau, 71 Haw. at 227–28, 787 P.2d at 688)).

C. *Statutory Interpretation*

"[T]he interpretation of a statute ... is a question of law reviewable de novo." ... State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting State v. Camara, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). See also State v. Toyomura, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); State v. Higa, 79 Hawai'i 1, 3, 897 P.2d 928, 930, reconsideration denied, 79 Hawai'i 341, 902 P.2d 976

(1995); State v. Nakata, 76 Hawai'i 360, 365, 878 P.2d 699, 704, reconsideration denied, 76 Hawai'i 453, 879 P.2d 558 (1994), cert. denied, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

Gray v. Administrative Director of the Court, State of Hawai'i, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). See also State v. Soto, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Gray, 84 Hawai'i at 148, 931 P.2d at 590 (quoting State v. Toyomura, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1-15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1-16 (1993).

State v. Kotis, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting State v. Dudoit, 90

Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich*, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998))))) (some brackets and ellipses points added and some in original).

D. *Constitutional Law*

■ We review questions of constitutional law *de novo*, under the "right/wrong" standard, and, thus, "exercise our own independent constitutional judgment[,] based on the facts of the case[,]" to answer questions of constitutional law. *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

## III.  *DISCUSSION*

As an initial matter, we address the prosecution's argument that, inasmuch as Rauch pled no contest, she is precluded from asserting nonjurisdictional claims on appeal. As this court has noted,

> generally, a guilty plea made voluntarily and intelligently precludes a defendant from later asserting any nonjurisdictional claims [on appeal], including constitutional challenges to the pretrial proceedings. Although the defendant may still challenge the sufficiency of the indictment or other like defects bearing directly upon the government's authority to compel the defendant to answer the charges in court, claims of nonjurisdictional defects in the proceedings, such as unlawfully obtained evidence and illegal detention, will generally not survive the plea. A plea of nolo contendere is equivalent to a plea of guilty in terms of waiving alleged nonjurisdictional defects.

*State v. Morin*, 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990) (citations omitted). *See also State v. Domingo*, 82 Hawai'i 265, 921 P.2d 1166 (1996) (following *Morin* ). However, inasmuch as sentence is determined after a plea is accepted, and (absent a prior agreement between the parties) a defendant cannot know what sentence will be imposed, a plea of no contest or guilty does not constitute a waiver of an appeal of the sentence on the grounds that it is illegal.

*Dudoit*, 90 Hawai'i at 265 n. 2, 978 P.2d at 703 n. 2 (some citations omitted). Under the foregoing principles, the prosecution's argument is patently without merit.

■ Moreover, if the family court erroneously waived its jurisdiction over Rauch, then the circuit court lacked jurisdiction to criminally adjudicate her. Thus, Rauch's claim that the family court misconstrued HRS § 571–22(d) and thereby erroneously waived its jurisdiction presents a jurisdictional issue. Her double jeopardy claim is also a claim that directly bears upon the prosecution's authority to criminally adjudicate her in circuit court and, therefore, survives her no contest plea. *See, e.g., Tomomitsu v. State*, 93 Hawai'i 22, 25, 995 P.2d 323, 326 (2000) ("where on the face of the record[,] the court had no power to enter the conviction or impose the sentence," defendant is not precluded from raising on appeal, after pleading guilty, a double jeopardy claim that is apparent on the face of the indictment, (citations omitted)). Her remaining two claims both address the legality of her sentence and, inasmuch as the plea agreement affirmatively reflects that the parties did not agree on her sentence (the prosecution reserved the right to request eight years of incarceration, while Rauch reserved the right to request probation and no incarceration), these claims survive her change of plea. Accordingly, Rauch's points of error on appeal are not precluded because she pled no contest.

A. *The Family Court Did Not Abuse Its Discretion In Waiving Jurisdiction Over Rauch.*

1. *The family court did not misconstrue HRS § 571–22(d).*

■ Rauch correctly notes that HRS § 571–22(d) vests discretion in the family court as to whether to waive its jurisdiction over a minor, even if the minor (1) is accused of an offense within the ambit of HRS § 571–22(d)(1), such as second degree murder, and (2) is not committable to a psychiatric institu-

tion. *See* HRS § 571–22(d) ("[t]he court *may* waive jurisdiction . . ."). Rauch, however, misconstrues the family court's remarks at her waiver hearing to suggest that the family court read the statute to mandate waiver if both of the conditions set forth in HRS § 571–22(d) were met. The family court expressly noted that it was aware that the statute was discretionary, ("the court is well aware that it says 'may' "), and remarked that its decision to waive jurisdiction was predicated on the seriousness of the offense. Thus, the record affirmatively reflects that the family court was aware that it retained discretion in waiving jurisdiction and that it did not construe the statute to mandate waiver.

■ Rauch also argues that the family court's failure to "exercise discretion[,] in and of itself[,] constitutes an abuse of discretion ." Rauch appears to argue that the family court's remarks concerning a "legislative policy" evince that it abdicated exercising its discretion in favor of following the legislative policy. The family court's remarks regarding the legislative policy of HRS § 571–22 are ambiguous, inasmuch as the court did not state what, specifically, it thought that policy was. Nevertheless, HRS § 571–22 clearly evinces a legislative policy that a minor of any age, who is accused of first or second degree murder, or attempted first or second degree murder, be more readily waivable into circuit court than minors sixteen or older accused of committing a felony offense, *see* HRS § 571–22(a), *supra* at note 5, or minors fourteen or older accused of committing a felony offense resulting in serious bodily injury or a class A felony, *see* HRS § 571–22(b) (1993 & Supp.1998), inasmuch as the factors enumerated in HRS § 571–22(c), *see supra* note 6, guiding the family court's discretion in waiving jurisdiction are required to be considered only with regard to waiver under subsections (a) and (b) and not to waiver under subsection (d). We believe that the family court's remarks regarding "legislative policy," when read in context, and together with the court's subsequent remarks clarifying its ruling at the hearing on Rauch's motion for reconsideration, reflect the foregoing understanding of the legislative amendments rather than an assertion that it had no dis-

cretion in deciding whether to waive its jurisdiction.

■ Rauch further argues that the family court was not precluded from considering the factors set forth in HRS § 571–22(c) in determining whether waiver of jurisdiction was appropriate. Rauch asserts that the family court's "complete[ ] disregard" of the HRS § 571–22(c) factors "was an abuse of discretion." HRS § 571–22 is not ambiguous. Subsection (c) lists factors "to be considered in deciding whether jurisdiction should be waived under subsection (a) and (b)." Its placement in the statute reflects that the family court is not bound to consider the factors enumerated in subsection (c) when confronted with a waiver proceeding under subsection (d), inasmuch as, if the legislature had so intended, a more logical place for the enumeration of the factors would be after all three waiver contexts set forth in subsections (a), (b), and (d). Be that as it may, nothing in the statute precludes the family court from considering the subsection (c) factors in deciding whether to waive jurisdiction under subsection (d). The fact remains, however, that the statute clearly and unambiguously does not *require* the family court to consider the subsection (c) factors when waiving jurisdiction under subsection (d). Accordingly, the family court's failure to expressly consider the subsection (c) factors does not constitute an abuse of discretion.

2. *The family court did not violate principles of double jeopardy.*

■ Rauch notes that this court has observed that "imposition of a requirement that in a waiver proceeding a minor must be shown by a preponderance of the evidence to have committed the offenses alleged would in all probability have the effect . . . of foreclosing subsequent criminal prosecution." *In re John Doe,* 61 Haw. at 53, 594 P.2d at 1088. Indeed, "[t]he mere introduction of evidence for the purpose of showing by a preponderance that the minor committed the offenses alleged would cause jeopardy to attach," thereby precluding criminal prosecution as an adult in circuit court, and, consequently, "[a] decision to waive jurisdiction would then

become meaningless." *Id.* Rauch posits that the family court's utterance of the phrase "probable cause," particularly given the introduction into evidence of the police report, constituted a finding that "it was more likely than not [that she] committed murder in the second degree." Rauch urges this court, therefore, to hold that the family court subjected her to double jeopardy.[8]

The family court, noting that it was aware of *In the Interest of Doe,* clarified its usage of the phrase "probable cause" at the hearing conducted with regard to Rauch's motion for reconsideration, explaining that it did not make a finding concerning Rauch's guilt or innocence but, rather, was remarking that the accusation appeared to be supported by the record. Indeed, inasmuch as HRS § 571–22(d)(1) requires the family court "find" that Rauch was alleged to have committed second degree murder, the family court is obligated to consider whether the charge is substantiated by the record, or, on the other hand, whether the prosecution has blatantly overcharged the matter in bad faith merely for the purpose of criminally prosecuting the minor in circuit court. Insofar as the context in which the family court remarked that the accusation appeared to be founded on "probable cause" clearly evinces that the family court was only addressing the substance of the charge, the family court's remark was neither a finding that Rauch had committed second degree murder nor a comment regarding her guilt or innocence at all.

With regard to the introduction of the police report, we note that it was not proffered for the purpose of establishing Rauch's guilt by a preponderance of the evidence; nor did the parties argue guilt or innocence at the waiver hearing. Accordingly, double jeopardy did not attach because the family court remarked that the accusation appeared to be grounded on probable cause, which the record reflects was intended by the court to mean that the charge was substantiated in the record.

B. *The Circuit Court Did Not Abuse Its Discretion In Sentencing Rauch.*

1. *Rauch was not entitled to time served credit for house arrest presentence detention.*

■ Rauch asserts that the circuit court erred by not crediting her with time served under presentence house arrest.[9] HRS § 706–623(2) provides in relevant part that,

---

8. As a technical conceptual point, it would be the subsequent criminal proceeding in circuit court that would, if Rauch's reading of the family court's remark were correct, subject her to double jeopardy and, therefore, be constitutionally precluded, and not the family court's waiver proceeding that implicates her right to be free from double jeopardy.

9. Rauch was initially placed under house arrest pursuant to the circuit court's order, filed on October 19, 1998, setting aside bail and establishing terms and conditions of temporary release, pending a formal supervised release hearing. Pursuant to that order, Rauch was required to reside with a relative, Daelynn Machiguichi, to remain under house arrest twenty-four hours a day, except to attend school, and to "not be on Kaamooloa Rd. in Waialua." Rauch was also subject to the standard terms and conditions of supervised release. After being indicted, the conditions of the foregoing order were amended to include twenty-four hour electronic monitoring and the condition allowing her to attend school was revoked. On November 13, 1998, the circuit court denied Rauch's request to visit her paternal grandfather from 8:00 a.m. to 8:00 p.m. on Saturday, November 14 and Sunday, November 15, 1998. Also on November 13, 1998, the circuit court converted Rauch's "temporary re-

lease" status to "supervised release"; however, the conditions of release did not alter. On December 14, 1998, the prosecution moved to revoke supervised release, on the grounds, *inter alia,* that Rauch had been seen shopping in the Windward Mall, at a music concert, and in Hale'iwa and Waialua. Also on December 14, 1998, Rauch moved to alter the conditions of supervised release, requesting that she be permitted to reside with Michelle Thomas, a friend of the Rauch family, so that Rauch could be tutored. The circuit court granted Rauch's motion and denied the prosecution's motion on January 12, 1999. On May 12, 1999, the circuit court denied Rauch's request to attend a funeral. On May 28, 1999, the circuit court granted Rauch's request to remove the electronic monitoring from June 1, 1999 to June 25, 1999, the period during which trial was to take place. However, on June 2, 1999, the circuit court, after accepting Rauch's no contest plea, reinstated the electronic monitoring. On June 9, 1999, the circuit court granted Rauch's request to transfer the location of her house arrest to her parent's new home in Wahiaw;a. Rauch was sentenced on September 14, 1999, and mittimus was effective immediately.

"[w]hen a defendant who is sentenced to probation has previously been detained in any state or county correctional or other institution following arrest for the crime for which sentence is imposed, the period of detention following arrest shall be deducted from the term of imprisonment if the term is given as a condition of probation." Although Rauch concedes that the private residences in which she was confined were not "state or county correctional ... institution[s]," she nevertheless contends her confinement in the homes of, respectively, her maternal aunt, a friend of the family, and her parents, *see supra* note 11, falls within the ambit of HRS § 706–623(2) as detention in an "other institution" of the "state or county." We disagree.

"Institution" is not statutorily defined. However, given the context in which it appears in the statute, it appears that the legislature intended credit be given only for confinement that was tantamount to imprisonment under the direct supervision of state or county actors. Although sparse, the legislative history confirms this interpretation.

What is now HRS § 706–623(2) was originally enacted as Act 124 in 1989, which provided in relevant part that

> [w]hen a defendant who is sentenced to probation has previously been detained in any State or local correctional or other institution following arrest for the crime for which sentence is imposed, such period of detention following arrest shall be deducted from the term of imprisonment if

such term is given as a condition of probation.

1989 Haw.Sess.L. Act 124, § 1 at 245. The House of Representatives Standing Committee Report reflects that the committee received testimony evincing that "the state courts currently have ordered such credit in some cases" and that Act 124 was intended merely to "provide the statutory authorization for bestowing such credit." Hse. Stand.Comm.Rep. No. 720, in 1989 House Journal, at 1093. The Senate Standing Committee Report made a similar observation and further noted that the Act would "provide clear statutory authorization for bestowing presentence *imprisonment* credit." Sen. Stand.Comm.Rep. No. 1342, in 1989 Senate Journal, at 1309 (emphasis added).

Thus, the legislature intended HRS § 706–623(2) to codify little more than the common practice of the state courts of granting "time-served credit" for presentence imprisonment.[10] Accordingly, to fall within the ambit of HRS § 706–623(2), a defendant detained in an "other institution" must be confined in such a manner as to be tantamount to imprisonment in a state or county correctional institution. Moreover, inasmuch as "state or county" modifies both "correctional ... institution" and "other institution," the defendant must be under the direct supervision and control of state or county actors, or, at the very least, actors under state or county control, such as subcontracted halfway houses or drug treatment centers.

The restrictions imposed on Rauch while under house arrest were not tantamount to imprisonment. As the circuit court noted,

---

10. At the time HRS § 706–623(2) was enacted in 1989 (permitting time-served credit where sentence imposed was probation subject to a special condition of a term of imprisonment), an administrative regulation promulgated pursuant to HRS § 706–671(1) (1993) (permitting time-served credit where the sentence imposed was an indeterminate maximum term of imprisonment) defined the terms "[c]orrectional facility" and "[o]ther institution" within the context of that statute as follows: " 'Correctional facility' means any state or local institution where offenders are detained," whereas " '[o]ther institutions' means any other institution, private or public, where offenders are detained and where presentence credit applies. This definition includes private or public facilities to which offenders were detained or treated as ordered by the courts."

HAR § 17–1204–1 (1985), *repealed* April 15, 2000.

The legislative history quoted above expressly contemplated that the presentence time-served credit system applicable to cases in which the sentence imposed was an indeterminate maximum term of imprisonment be similarly applied to presentence time-served credit granted in cases in which the sentence imposed is probation subject to a special condition of a term of imprisonment. Although the definition of "other institutions" contained in the regulation appeared to contemplate that credit might be granted for time served in institutions such as Miller Hale, there is no indication in the administrative regulation that such credit was intended to extend to court-ordered detention by way of house arrest.

Rauch enjoyed no visitation restrictions, no telephone or other communicative restrictions, and no restrictions regarding her living environment. Thus, Rauch was not confined in an "other institution" within the meaning of HRS § 706–623(2), inasmuch as she was not subject to restrictions akin to those imposed upon prisoners confined in a state or county correctional institution. Furthermore, Rauch was under the direct supervision of private citizens—her maternal aunt, a friend of the family, and her parents, *see supra* note 9—the entire time she was under house arrest and, consequently, she was not confined to a "state or county . . . institution," inasmuch as these private citizens were not state actors.

Accordingly, inasmuch as the conditions and restrictions of house arrest in the present matter did not amount to detention in a "state or county . . . institution," Rauch is not statutorily entitled to credit for the time she served under presentence house arrest.[11] The circuit court, therefore, did not err in denying her request for credit for time so served.[12]

### 2. *The circuit court considered all the relevant statutory factors in sentencing Rauch.*

Rauch asserts that "findings of fact consistent with all the factors of [HRS] § 706–606(2) . . . are necessary prior to imposing a jail term where the person is placed on probation." Rauch reasons that, inasmuch as the circuit court did not expressly make findings of fact with regard to the factors set forth in HRS §§ 706–606(2)(c) and 706–606(2)(d) and, in any event, the record, according to Rauch, is insufficient to support either of these factors, the circuit court abused its discretion by imposing a one-year term of imprisonment as a special condition of her probation.

HRS § 706–621 (1993) generally sets forth the factors a sentencing court shall consider in imposing a term of probation, and subsection (1) directs the sentencing court to consider the "factors set forth in [HRS § ] 706–606 to the extent that they are applicable." HRS § 706–624(2) (1993), entitled "[d]iscretionary conditions" of probation, provides in relevant part that

> [t]he court may provide, as further conditions of probation, to the extent that the conditions are reasonably related to the factors set forth in [HRS § ] 706–606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in [HRS § ] 706–606(2), that the defendant:
> 
> (a) Serve a term of imprisonment not exceeding one year in felony cases[.]

HRS § 706–606 (1993) provides as follows:

> The court, in determining the particular sentence to be imposed, shall consider:

---

**11.** We note that HRS § 706–623(2) does not vest the sentencing court with discretion as to whether to credit presentence time served; rather, the plain language of the statute evinces that, if the requisite conditions are met—to wit, (1) presentence detention in a state or county correctional or other institution, (2) for the crime for which the defendant is sentenced, and (3) the sentence is one of probation subject to the special condition of a period of incarceration—, then the sentencing court is required to give the defendant credit for the time so served. The legislative history confirms that the legislature intended the statute to be mandatory. *See* Sen. Stand.Comm. Rep. No. 1342, in 1989 Senate Journal, at 1309 ("The purpose of this bill is to require that the courts grant credit for defendants who have been sentenced to imprisonment as a condition of probation and who have been detained in a correctional or other institution following arrest for the crime for which sentence is imposed." "Upon consideration of the bill, you[r] Committee has amended it to make the granting of credit mandatory."). *See also* Hse.

Stand.Comm.Rep. No. 720, in 1989 House Journal, at 1093 ("Your Committee has amended the bill to reflect that such period of detention shall, instead of may, at the discretion of the court be deducted from the term of imprisonment if such term is given as a condition of probation.").

**12.** Rauch relies on *Dedo v. Maryland*, 343 Md. 2, 680 A.2d 464 (1996), and *United States v. Mori*, 798 F.Supp. 629 (D.Haw.1992), both of which appear to set forth separate and distinct tests for determining whether to give credit for time served under house arrest and in a halfway house, respectively. Inasmuch as we hold that the house arrest under which Rauch was detained did not trigger the time-served statute in the first instance, we express no opinion regarding these cases or the tests articulated in them. In any event, each case was decided upon the vagaries of the applicable time-served statutes (and, with respect to *Dedo*, Marylands' escape statutes), which are different from the statutes applicable in the present matter.

(1) The nature of the circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

    (a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (b) To afford adequate deterrence to criminal conduct;

    (c) To protect the public from further crimes of the defendant; and

    (d) To provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

We find nothing in the foregoing statutory provisions that requires, as argued by Rauch, a sentencing court expressly to make findings of fact with regard to each of the factors enumerated in HRS § 706–606(2). Indeed, the foregoing statutory provisions expressly vest the sentencing court with wide discretion, and, with regard to imposing a sentence of probation, require only that the court consider the HRS § 706–606 factors that are "applicable." HRS § 706–621. The record in the present matter reflects that the circuit court did consider all relevant statutory factors in sentencing Rauch. *See supra* section I.

Rauch principally relies upon the following proposition: "As a general matter, when exercising its broad discretion to impose any particular sentence so as to fit the punishment to the offense as well as to the needs of the individual defendant and the community, the sentencing court [is] obligated to consider the HRS § 706–606 'factors' as part of its decision making process." *State v. Gaylord,* 78 Hawai'i 127, 149, 890 P.2d 1167, 1189 (1995) (citations omitted). However, Rauch's claim is not that the circuit court failed to consider the HRS § 706–606 factors in imposing a sentence of probation for ten years.

Rather her claim is that the HRS § 706–606 factors must be considered in the specific context of imposing conditions of probation; *Gaylord,* consequently, is inapposite.

In *Gaylord,* this court observed that the HRS § 706–606 factors must be considered in the context of the sentencing court's decision to impose consecutive or concurrent sentences, inasmuch as HRS § 706–668.5, vesting the sentencing court with discretion to impose consecutive or concurrent sentences, expressly provides that the sentencing court "shall consider the factors set forth in [HRS § ] 706–606." By way of contrast, in imposing a sentence of probation, the applicable statute expressly provides that the sentencing court "shall consider ... [t]he factors set forth in [HRS § ] 706–606 to the extent that they are applicable." Accordingly, we find no merit in Rauch's claim that the circuit court was required to consider all of the HRS § 706–606 factors in determining whether to impose a term of probation and the conditions thereof.

Rauch next appears to argue that because the record allegedly fails to support findings under HRS §§ 706–606(2)(c) and 706–606(2)(d), the circuit court was precluded from imposing a sentence of incarceration. This argument is also without merit, inasmuch as the foregoing statutory provisions require the sentencing court to weigh and balance the various factors and in no manner indicate that any given factor is dispositive of whether a term of imprisonment may be imposed as a condition of probation. Thus, even if neither factor had evidentiary support, the circuit court would not, under the statutory sentencing scheme outlined above, be required to forego imposing a term of imprisonment as a condition of probation.

## IV. CONCLUSION

In light of the foregoing, we affirm the circuit court's judgment of conviction and sentence.