In the Interest of JOHN DOE, Born on November 12, 1958,
Juvenile-Appellant

NO. 6351

MAY 14, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND
CIRCUIT JUDGE KATO
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY OGATA, J.

This is an appeal from an order of the family court waiving jurisdiction over appellant pursuant to HRS § 571-22 (1976).[1] Appellant was a minor during all relevant proceedings below. He was by petition[2] alleged to have committed crimes which, if committed by an adult, would constitute felonies. The family court, subsequent to investigation and hearing, ordered appellant held for criminal proceedings in circuit court. We affirm.

By petitions filed with the family court, appellant was alleged to have committed, on November 24, 1975, the offenses of rape in the first degree[3] and sodomy in the first

---

[1] HRS § 571-22(a) (1976) provides as follows:

The court may waive jurisdiction and order a minor or adult held for criminal proceedings after the full investigation and hearing where the person during his minority, but on or after his sixteenth birthday, is alleged to have committed an act which would constitute a felony if committed by an adult, and the court finds there is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill, is not treatable in any available institution or facility within the State designed for the care and treatment of children, or that the safety of the community requires that the person continue under judicial restraint for a period extending beyond his minority.

[2] See HRS § 571-21 (1976) (initiation of cases in family court).

[3] See HRS § 707-730 (1976).

degree.[4] By additional petitions filed with the family court, appellant was alleged to have committed, on January 25, 1976, the offenses of rape in the first degree and murder.[5] Petitions for waiver of jurisdiction were filed on February 20, 1976. Shortly thereafter, an order of examination and appointment of diagnostic team was entered by the family court.

A hearing on the petitions for waiver was held on May 11, 1976. At that hearing, the family court heard testimony from members of the diagnostic team as well as from witnesses called by appellant. Written diagnostic reports were also submitted by both sides at the hearing. On May 12, 1976, the family court issued its order granting the petitions for waiver of jurisdiction.

Appellant thereafter moved for a rehearing and reconsideration of the order. After a hearing held on May 27, 1976, the family court denied appellant's motion. This appeal followed.

I.

Appellant initially contends that the order waiving jurisdiction must be overturned due to an absence of proof below that he in fact committed the offenses alleged. He specifically maintains that HRS § 571-41 (1976) requires proof of the commission of the offenses by a preponderance of the evidence before waiver may be allowed. He thus asserts that the family court's finding that the safety of the community requires judicial restraint beyond his minority[6] should be rejected because it was improperly premised upon the assumption that he committed the offenses alleged. We see no merit to these contentions.

---

[4] See HRS § 707-733 (1976). Appellant was alleged to have committed two counts of this offense.

[5] See HRS § 707-701 (1976).

[6] See order of the family court, n. 10 *infra*.

First, we are unable to accept appellant's broad assertion that in waiver proceedings HRS § 571-41 (1976) requires proof of the commission of the offenses alleged by a preponderance of the evidence. No provision in HRS Chapter 571 (1976), including HRS § 571-41 (1976), explicitly provides for application of any standard of proof in waiver proceedings, and we are unable to conclude that HRS § 571-41 (1976) was intended to apply to such proceedings by implication.

HRS § 571-41 (1976) provides in pertinent part as follows:

> *Procedure in children's cases.* Cases of children in proceedings *under* section 571-11(1) and (2) shall be heard by the court separate from hearings of adult cases and without a jury. . . .

> Findings of fact by the judge or district family judge of the validity of the allegations in the petition shall be based upon a preponderance of evidence admissible in the trial of civil cases except for petitions alleging the court's jurisdiction under section 571-11 (1) which shall require proof beyond a reasonable doubt in accordance with rules of evidence applicable to criminal cases, . . .

> In the *disposition part of the hearing* any relevant and material information, including that contained in a written report, study, or examination, shall be admissible, and may be relied upon to the extent of its probative value; provided, that the maker of the written report, study, or examination shall be subject to both direct and cross-examination upon demand and when he is reasonably available. *The disposition* shall be based only upon the admitted evidence, and *findings adverse to the child as to disputed issues of fact shall be based upon a preponderance of such evidence.* [Emphasis added.]

> \* \* \* \* \*

Appellant points to the last paragraph quoted above to support his contention that the family court was required, for purposes of waiver, to find by a preponderance of the evidence that he committed the offenses alleged. In our opinion, HRS § 571-41 (1976) is at best ambiguous as to whether it

applies to waiver proceedings at all. Although the term "disposition" is utilized, nowhere in HRS § 571-41 (1976) are waiver proceedings under HRS § 571-22 (1976) mentioned. The legislative history sheds very little light on this question.

After a close inspection of the plain language of HRS § 571-41 (1976), as well as possible effects in light of current case law of appellant's proposed interpretation of the statute, we conclude that the statute applies only to adjudicatory and post-adjudicatory proceedings under HRS §§ 571-11(1) and (2) (1976). *See State v. English*, 61 Haw. 12, 17, 594 P.2d 1069, 1073 (1979). HRS § 571-41 (1976) is not, in our opinion, intended to provide the standard of proof applicable to waiver proceedings.

The first paragraph of HRS § 571-41 (1976) refers only to proceedings under HRS §§ 571-11(1) and (2) (1976). The second paragraph of HRS § 571-41 (1976) sets forth, according to its context, the standards of proof applicable to facts alleged in adjudicatory proceedings under both HRS §§ 571-11(1) and (2) (1976). The third paragraph of HRS § 571-41 (1976), as we construe it, provides guidelines and standards for the conduct of *post-adjudicatory* dispositional proceedings. The reference in that paragraph to "the disposition part of *the hearing*" convinces us that that paragraph was intended to apply only to proceedings conducted subsequent to — and resulting from — the adjudicatory hearing itself.

It is further apparent that to construe HRS § 571-41 (1976) as appellant would have us construe it would engender an absurd result. In *Breed v. Jones*, 421 U.S. 519 (1975), the Supreme Court held that the taking of evidence in a juvenile adjudicatory hearing to determine whether the minor had committed acts which violated a criminal law precluded, on double jeopardy grounds, the subsequent criminal prosecution of the minor following waiver of jurisdiction by the juvenile court. The state statute at issue in *Breed* provided that upon production of a mere *preponderance* of legally admissible evidence, the minor could be adjudged a person within the jurisdiction of the juvenile court. The Court held that jeopardy attached in such a proceeding upon the taking of evi-

dence relating to the commission of the offenses by the minor.[7]

In the instant situation, imposition of a requirement that in a waiver proceeding a minor must be shown by a preponderance of evidence to have committed the offenses alleged would in all probability have the effect under *Breed* of foreclosing subsequent criminal prosecution. *See also United States ex rel. Bombacino v. Bensinger,* 498 F.2d 875, 878 n. 11 (7th Cir.), *cert. denied,* 419 U.S. 1019 (1974); Note, *Juvenile Law – Double Jeopardy* – TRANSFER HEARINGS MUST BE HELD PRIOR TO ADJUDICATION ON MERITS —*Breed v. Jones,* 421 U.S. 519 (1975), 25 DePaul L. Rev. 783, 788 & n. 27 (1976). The mere introduction of evidence for the purpose of showing by a preponderance that the minor committed the offenses alleged would cause jeopardy to attach. *Breed, supra.* A decision to waive jurisdiction would then become meaningless. We do not regard such an absurd result to have been intended by the legislature, and we consequently hold that, with regard to waiver hearings, HRS § 571-41 (1976) does not require proof by a preponderance of the evidence that the minor committed the offenses alleged. HRS § 1-15(3) (1976); *see State v. Taylor,* 49 Haw. 624, 425 P.2d 1014 (1967).

We are particularly mindful that the purpose of a waiver hearing is not to determine whether the minor has committed — or even whether there is probable cause to believe that he has committed — the offenses alleged. For purposes of waiver, the charges against a minor are in actuality presumed to be true, and evidence may not ordinarily be admitted to prove the truth of the allegations of criminal law violation. *In re Welfare of W.J.R.,* _____ Minn. _____, _____, 264 N.W.2d 391, 393 (1978). The ultimate concern in a waiver proceeding is not whether the minor committed the offenses alleged, but

---

[7] The Court also made clear, however, that a state was not precluded from imposing a requirement that as a prerequisite to waiver, "substantial evidence" that the minor committed the offenses alleged must be adduced. 421 U.S. at 538 n. 18. We simply note that no such provision has been included in HRS Chapter 571 (1976) by our legislature.

whether sufficient evidence has been adduced to justify waiver under the standards specified in HRS § 571-22 (1976).

Therefore, we reject appellant's contention that before waiver of jurisdiction could have taken place here, he must have been found by at least a preponderance of the evidence to have committed the offenses alleged. We also reject appellant's contention that the members of the diagnostic team, all of whom found that the safety of the community required judicial restraint beyond appellant's minority, improperly based their recommendations upon the assumption that he committed the offenses alleged. Consistent with the views expressed herein, we hold that in formulating their assessments, the diagnostic team members were entitled to rely upon the assumption that appellant committed the offenses alleged.[8]

## II.

Appellant next contends that the waiver order was defective under the requirements of *Kent v. United States*, 383 U.S. 541 (1966).[9] He argues that the waiver order does not adequately set out the reasons for the family court's decision to waive jurisdiction.

We recently considered this same issue in *State v. Stanley*, 60 Haw. 527, 592 P.2d 422 (1979). In *Stanley, supra,*

---

[8] In addition, the diagnostic team members were entitled to consult reliable sources of information, such as police.reports, in ascertaining particular information upon which to base their evaluations. We do not agree with appellant's proposition that diagnostic team testimony based upon hearsay information not in evidence cannot be considered by the family court. *See State v. Bannister*, 60 Haw. 658, 594 P.2d 133 (1979). The very nature of a waiver proceeding precludes the imposition of such formal evidentiary standards. *People v. Chi Ko Wong*, 18 Cal.3d 698, 717, 557 P.2d 976, 989, 135 Cal. Rptr. 392, 404 (1976). *See also In re Dinson*, 58 Haw. 522, 574 P.2d 119 (1978).

[9] In *Kent, supra,* the Supreme Court held that it would be inconsistent with due process and fairness to permit waiver without a hearing, without effective assistance of counsel, and without a statement of reasons supporting the waiver decision.

we held that while a statement of reasons "need not be formal or necessarily include conventional findings of fact," the statement should be "sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the family court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Id.* at 536, 592 P.2d at 427. However, we went on to hold in *Stanley* that where "the waiver order, together with the oral statements made by the family court, reveal with sufficient specificity the reasons for the court's decision so as to permit meaningful review", the requirements of *Kent* will have been met and the minor will not be deemed to have been deprived of due process of law. *Id.* In upholding the waiver order in *Stanley,* we noted that the family court had made several statements during the course of the waiver hearing which, together with the written waiver order, adequately revealed the underlying considerations which moved the family court to render the decision which it did.

In the instant case, the family court initially took the case under advisement at the close of the May 11, 1976, waiver hearing. On May 12, 1976, the court issued its order waiving jurisdiction.[10] Other than the conclusory statements set out

---

[10] The waiver order provides in full as follows:

The Petitions for Waiver of Jurisdiction filed on behalf of the State of Hawaii by its Prosecuting Attorney of the City and County of Honolulu, having come on to be heard on the 11th day of May, 1976, before the Honorable Patrick K. S. L. Yim, Judge of the above-entitled Court and full investigation having been made as required by § 571-22, *H.R.S.* and the person, [appellant], being present and represented by his attorney, Arthur K. Nakagawa; and the State being represented by GEORGE H. YAMAMOTO, Deputy Prosecuting Attorney; and this Court having considered all the evidence presented and the files of the Family Court including those submitted by the persons appointed to investigate and advise the Court, doctors appointed by the Court to make and report on the mental and physical condition of [appellant] as well as oral arguments on his behalf, the Court waived jurisdiction over the person and offenses of [appellant] whose birth date is November 12, 1958, and who, by five separate petitions filed in this Court on February 18, 1976 and February 19, 1976, was charged with the offenses: Rape in the First Degree (Two Counts); Sodomy in the First Degree (Two Counts) and Murder. The Court further determined, based on all the evidence adduced and the Court's files and records of which it took judicial notice, that the said

in the order relating to the family court's findings under HRS § 571-22(a) (1976), no additional statement of reasons supporting the family court's decision appears in the record as of May 12, 1976. Hence, no specification of the factors and evidence which moved the family court to render its decision appears in the record up to that date.

However, the problem is adequately resolved in the instant case by the statements made by the family court during the May 27, 1976, hearing on appellant's motion for rehearing and reconsideration. The transcript of that hearing is a part of the record on this appeal. Certain statements made by the family court at that hearing reveal with at least minimal sufficiency the family court's reasons for its decision.[11]

---

[appellant] was seventeen years of age at the time of the alleged offenses, which offenses would constitute a felony if committed by an adult, and that:

(a) [appellant] is not committable to an institution for the mentally defective or retarded or the mentally ill, but is treatable in any available institution or facility within the State designed for the care and treatment of children;

(b) the safety of the community requires that [appellant] continue under judicial restraint for a period extending beyond his minority.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this Court waive jurisdiction over said [appellant].

[11] The transcript of the May 27 hearing reveals the following pertinent statements made by the family court during discourse with appellant's counsel, Mr. Nakagawa:

THE COURT: I believe the record indicates that he is not committable involuntarily to a mental institution.

MR. NAKAGAWA: Yes, your Honor.

THE COURT: And that was the evidence of Doctor Schramel who was a witness at the proceedings when it was last before the Court. Is that a fair statement?

MR. NAKAGAWA: Well, I think Doctor Schramel said that because certain data —

THE COURT: No, I don't believe Doctor Schramel said that. I believe Doctor Schramel said that . . . your client, . . . in the broad sense, had a mental illness; in the narrow sense --

MR. NAKAGAWA: In the medical sense.

THE COURT: — and I assume that's what we're talking about — .

MR. NAKAGAWA: Yes. ·

THE COURT: — medical and legal sense he was not — did not meet the criteria as set forth in the identification of the various kinds of mental illnesses

As in *Stanley*, we are thus able to ascertain that the decision to waive jurisdiction was made after full investigation and consideration of the evidence presented. Our review of the entire record reveals that the resultant decision to waive jurisdiction is supported by substantial evidence. *Stanley, supra*. We therefore decline to overturn the waiver order on this ground.

---

available in the glossary or terms published by the American Psychiatric Association. Is that a fair statement — restatement of what Doctor Schramel said?

MR. NAKAGAWA: Yes, your Honor. . . .

\* \* \* \* \*

MR. NAKAGAWA: All right, let's go back to number one, committability. Your Honor, I feel that although the psychiatrist, Douglas Schramel said that medically speaking on a broad sense . . . I believe, in a broad sense, he stated that [appellant] is mentally ill but in a precise medical sense, [appellant] is not mentally ill. So when it came down to [the] question of whether this minor was committable, he made no determination.

THE COURT: Oh, yes, he did. Because I asked specifically, Mr. Nakagawa, whether —

. . . .

I asked Doctor Schramel specifically whether the minor was committable involuntarily to a mental institution and I think Doctor Schramel's reply was in the negative. . . .

MR. NAKAGAWA: All right, your Honor. . . .

I feel that 571-22 should also reflect if committed — if committable, the minor can be treated in any available — in an available institution or facility within the State of Hawaii designed for the care and treatment of the children. And from all testimony given during the hearing itself, the consensus was that he was treatable.

THE COURT: But the consensus was also what? Beyond that?

MR. NAKAGAWA: That he needed to be restrained.

THE COURT: He needed judicial restraint beyond his minority.

MR. NAKAGAWA: And that's being based on what, your Honor?

THE COURT: But that was the consensus, right? No?

MR. NAKAGAWA: Well, we're trying to take up. : . . Yes, it was, your Honor. .

THE COURT: . . . . It was the consensus of all witnesses, including Doctor Christopher Barthel, who you called as [a] witness on behalf of the minor, that the minor though treatable in an institution for juveniles required — however required judicial restraint beyond his minority, is that correct?

MR. NAKAGAWA: Yes, your Honor.

III.

Finally, appellant contends that his exercise of the privilege against self-incrimination during pre-waiver diagnostic interviews was ultimately held against him by the family court. It appears that because of appellant's refusal on self-incrimination grounds to discuss the acts alleged to have been committed, both the State's psychiatrist and the psychologist called to testify for appellant were unable to determine the precise length of treatment which appellant would require. Appellant argues that in view of the lack of a precise determination as to the length of treatment required, the family court improperly placed upon him the burden of proving that judicial restraint was not required by premising its order upon his failure to cooperate fully during the diagnostic interviews. Appellant maintains that his exercise of the privilege against self-incrimination was thus used against him by the family court.

Although the United States Supreme Court has held that the privilege against self-incrimination applies in all juvenile adjudicatory proceedings, *In re Gault*, 387 U.S. 1 (1967), it has not explicitly determined whether the privilege also applies in waiver proceedings. Of course, full application of the broad principles announced in *Gault* would lead to the conclusion that the privilege should apply in such proceedings. We need not dwell on this question, however, for the record before us contains in any event sufficient support for the family court's finding that the safety of the community requires judicial restraint of appellant beyond his minority. We are unable to agree that in waiving jurisdiction, the family court was so motivated by the exercise by appellant of his privilege against self-incrimination that the order waiving jurisdiction must be nullified.

The family court was careful to point out during the May 27, 1976, hearing that the consensus of the expert testimony was that although appellant was treatable in an institution for minors, judicial restraint beyond his minority was nevertheless required. Appellant's counsel acknowledged that tes-

timony at that hearing.[12] Appellant's counsel contended at the May 27, hearing, however, that the family court should reconsider its decision because Act 85, § 5, S.L.H. 1976,[13] which extended the jurisdiction of the family court over juvenile offenders from age 18 to age 19, had gone into effect the day after the waiver order was filed. In our opinion, the family court's refusal to reconsider its waiver decision despite the passage of Act 85 is adequately supported by the record.

The testimony of the State's psychiatrist, Dr. Schramel, which was relied upon to a considerable extent by the family court, revealed that any course of treatment for appellant would in all likelihood take "a long time", and that diagnostic testing alone could take up to a year to complete.[14] Appellant

---

[12] As previously set out in n. 11, *supra*, the transcript of the May 27 hearing contains the following statements by the family court and by appellant's counsel, Mr. Nakagawa:

THE COURT: . . . . It was the consensus of all witnesses, including Doctor Christopher Barthel, who you called as [a] witness on behalf of the minor, that the minor though treatable in an institution for juveniles required — however required judicial restraint beyond his minority, is that correct?

MR. NAKAGAWA: Yes, your Honor.

Mr. Nakagawa also made the following comment while objecting during the May 27 hearing to certain aspects of the evidence presented:

Your Honor, throughout the hearing, testimony relating to restraint, I believe it was the feeling or the testimony of all the witnesses that they felt that the minor should be restrained after reaching his majority. . . .

[13] Currently designated HRS § 571-13 (1976).

[14] Upon questions propounded to him by Mr. Nakagawa at the May 11 hearing, Dr. Schramel responded as follows:

Q. And again likewise, as far as being committed, for the length of treatment, again you can't pinpoint that particular length?

A. Well, I'm sure it'll take a long time. Let me also add, he certainly could be dangerous to himself. It's not uncommon for these types of things, to finally pry into somebody's conscious. And obviously [appellant] being brought up as he is has a good value system and it's going to weigh heavily on him and he could easily impulsively endanger himself. So that should be brought in the record just so that when people care for him they look out for this.

\*    \*    \*    \*    \*

But judging that the full facts have never even been known, that he's close to his eighteenth birthday, I don't think anyone would say that — no one even knows why he did it. I don't think anyone would say that — that even further diagnostic test would take at least a year or further psychotherapy minimum, and it would be foolhardy to feel that it wouldn't take a long period of time.

was six months short of his eighteenth birthday at the time the waiver proceedings were conducted. Based upon the testimony of Dr. Schramel, as well as the other members of the diagnostic team, the family court was reasonably able to conclude that the safety of the community required judicial restraint beyond appellant's minority. The family court was not required to determine precisely how long a rehabilitative treatment program would take. *People v. Browning*, 45 Cal. App.3d 125, 140, 119 Cal. Rptr. 420, 430 (1975). In deciding to waive jurisdiction, the family court was entitled to consider the possibility that rehabilitative treatment would extend beyond appellant's minority, although substantial evidence was required to support the finding that such treatment could extend for such a length of time. *See Jimmy H. v. Superior Court*, 3 Cal.3d 709, 715, 478 P.2d 32, 36, 91 Cal. Rptr. 600, 604 (1970) (en banc).[15] As is apparent from the record, the family court considered several factors, including the nature and seriousness of the offenses charged and the likelihood of rehabilitation under family court supervision, in reaching its conclusion that judicial restraint beyond appellant's minority was necessary. In our opinion, the evidence considered by the family court, particularly including the testimony of Dr. Schramel, constitutes substantial evidence supporting the finding that rehabilitative treatment could extend beyond appellant's minority.

The family court's consideration of appellant's refusal to cooperate during the diagnostic interviews was undertaken at the May 27 hearing solely in the context of a determination as to whether the record supported a rehearing. The family court's refusal to reconsider its waiver decision was based principally upon its conclusion that the record was adequate to support waiver despite appellant's refusal to cooperate during the diagnostic interviews. The family court thus determined that appellant failed to sustain his burden of showing that a rehearing was justified on the basis of the record

---

[15] *Contra In re Barker*, 17 Md.App. 714, 305 A.2d 211 (1973), in which it was held that a fair preponderance of the evidence must show that it is *probable* that the minor will require treatment beyond the age of minority.

presented. In our opinion, no undue burden was placed upon appellant to affirmatively prove that he did not require judicial restraint beyond his minority. Therefore, we are unable to agree with appellant that the family court's decision was based upon his earlier refusal to cooperate on self-incrimination grounds.

Based on the foregoing, we hold that the order of the family court granting the petitions for waiver of jurisdiction must be affirmed.

*David Schutter (Schutter & O'Brien* of counsel) for Juvenile-Appellant.

*Michael A. Lilly,* Deputy Attorney General, for State of Hawaii.