112 P.3d 745

**STATE of Hawaii, Plaintiff–Appellee,**

v.

**Travis A. LIMOZ, Defendant–Appellant.**

**No. 25415.**

Intermediate Court of Appeals of Hawai'i.

April 15, 2005.

Brian A. Costa, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Travis Anthony Limoz (Defendant, Appellant or Travis) appeals the August 22, 2002 judgment of the Circuit Court of the First Circuit (circuit court) that convicted him, after a bench trial, of reckless manslaughter, an included offense of the charge of murder in the second degree.

The charge arose out of an incident that occurred during the early morning hours of August 13, 2000, in which the seventeen-year-old Defendant drove his mother's car at Cecil Edward Mosley (Mosley), who ended up splayed across the hood and windshield of the car, whereupon Defendant sped away then screeched to a halt—dislodging Mosley and causing him to hit his head on the pave-

ment—then sped away again. Mosley died of his head injuries four days later.

On appeal, Defendant avers that the Family Court of the First Circuit (family court) erred at the hearing[1] on the petition for waiver of the family court's original, exclusive jurisdiction, filed by the State pursuant to Hawaii Revised Statutes (HRS) § 571–22(a) (Supp.2004),[2] when the family court admitted the police report into evidence without affording Defendant the opportunity to call, confront and cross-examine the percipient witnesses to the offense named in the police report.[3] Defendant also avers that the circuit court[4] committed constitutional error in accepting his waiver of jury trial because the colloquy the circuit court conducted with him was inadequate. We disagree with both of Defendant's averments, and affirm.

## I. Background.

### A. Waiver of Family Court Jurisdiction.

In connection with his point of error regarding the waiver of family court jurisdic-

1. The Honorable Frances Q.F. Wong presided over the waiver hearing in the Family Court of the First Circuit.

2. Hawaii Revised Statutes (HRS) § 571–22 (Supp.2004) provides, in pertinent part:

   (a) The court may waive jurisdiction and order a minor or adult held for criminal proceedings after full investigation and hearing where the person during the person's minority, but on or after the person's sixteenth birthday, is alleged to have committed an act that would constitute a felony if committed by an adult, and the court finds that:
   (1) There is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill;
   (2) The person is not treatable in any available institution or facility within the State designed for the care and treatment of children; or
   (3) The safety of the community requires that the person be subject to judicial restraint for a period extending beyond the person's minority.
   . . . .
   (c) The factors to be considered in deciding whether jurisdiction should be waived under subsection (a) or (b) are as follows:
   (1) The seriousness of the alleged offense;
   (2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or wilful manner;
   (3) Whether the alleged offense was against persons or against property, greater weight

tion, Defendant references the following from the transcript of the November 30, 2000 waiver hearing:

[THE COURT: ]The record should reflect that the Court did have a prehearing discussion with both counsel present with regard to Travis's waiver just this morning. And at that time I was informed by counsel that defense did call certain witnesses which would have been relevant to the underlying violation that-that Travis is facing.

At that time, because we were unsure when we were going to begin proceeding, I did instruct [defense counsel] to release them. But I would, however, wish to put on record [defense counsel's] intention to call them and the reason therefor and then I can make my finding on record. [Defense counsel]?

[DEFENSE COUNSEL]: All right, thank you.

being given to offenses against persons, especially if personal injury resulted;
(4) The desirability of trial and disposition of the entire offense in one court when the minor's associates in the alleged offense are adults who will be charged with a crime;
(5) The sophistication and maturity of the minor as determined by consideration of the minor's home, environmental situation, emotional attitude, and pattern of living;
(6) The record and previous history of the minor, including previous contacts with the family court, other law enforcement agencies, courts in other jurisdictions, prior periods of probation to the family court, or prior commitments to juvenile institutions;
(7) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the minor (if the minor is found to have committed the alleged offense) by the use of procedures, services, and facilities currently available to the family court; and
(8) All other relevant matters.

3. HRS § 571–22.5 (1993) provides: "An order waiving jurisdiction shall not be appealable as a final order, but may only be appealable in conjunction with an appeal of all other issues after a trial on the charge against such minor or adult."

4. The Honorable Wilfred K. Watanabe presided over the proceedings in the Circuit Court of the First Circuit, including the jury waiver and the bench trial.

Your Honor, it's my understanding that at some point the State is going to ask the Court to receive, in connection with the hearing, the police report compiled in this case. That report has a number of statements, some of them are handwritten, some of them are transcripts of tape recorded statements, of numerous witnesses who purportedly witnessed the incident in question.

I subpoenaed the following witnesses, Alfred Furtado-and I believe the Court file will indicate that these subpoenas were returned and these gentlemen were present this morning outside the court-Alfred Furtado, Ryan Bolosang (phonetic), Jonas Robinson, Courtney Bareng (phonetic), Shawn (phonetic) Decosta, Troy Mendoza, and I believe John Sykes (phonetic) as well. I did have subpoenas out also for David Gibson and Kuulani Lepan (phonetic) although I don't believe that they were served. In any event, those witnesses who did appear, I did release pursuant to the Court's instruction.

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]: And we have this objection. To the extent that the Court is going to receive the report in evidence, it is my understanding, based on my reading of [*In re Dinson,* 58 Haw. 522, 574 P.2d 119 (1978), *overruled on other grounds, State v. Sanders,* 102 Hawai'i 326, 330, 76 P.3d 569, 573 (2003)], that the issue raised in that case to the Supreme Court had to do with whether or not hearsay evidence would be admissible in a-in a waiver proceeding like this.

The court and the Supreme Court made it clear, I think, that hearsay evidence is admissible because the waiver of [sic] proceeding is usually called dispositional primarily dispositional and essentially of the nature of the ordinary sentencing proceeding, and so apparently there was a-the opinion that there was some relaxation of the rules with respect to hearsay.

However, [in *Dinson,* 58 Haw. at 528, 574 P.2d at 124,] the Supreme Court also indicated that the appellant in that case did have the full opportunity to ascertain the sources of all factual statements in this report that contained hearsay statements and that the appellant in that case did not complain of any lack of opportunity to call the informants who were the sources of the factual statements in that report.

By subpoenaing these witnesses and having them present today, it was my intention to do what the appellant in [*Dinson*] apparently had the opportunity to do—

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]:—which would be to question those out-of-court declarants whose statements appear in the police report.

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]: And that was the reason for having these—these witnesses present and it was my intention to cross-examine them with respect to their statements which are in the police report.

THE COURT: Thank you. And [the deputy prosecuting attorney (DPA) ]?

[DPA]: Your Honor, the State's position is that the defense or State is not allowed to call witnesses as to the charge involved, that the taking of evidence in a later case could preclude subsequent trial on double jeopardy grounds and so that defeats the whole purpose of the waiver. Whether it is a waiver or not, the purpose of the waiver is not to determine whether the minor has committed—or whether there is even probable cause to believe that he committed the offense, but to decide, you know, which court should determine the charge, [that's *In re John Doe,* 61 Haw. 48, 594 P.2d 1084 (1979)].

THE COURT: The—

[DEFENSE COUNSEL]: Your Honor, may I respond just briefly?

THE COURT: Of course, yeah.

[DEFENSE COUNSEL]: Your Honor, with respect to—well, you know, the Court has indicated that clearly we're proceeding under [HRS § 571–22(a)]. And in that subsection basically—well [HRS § 571–22(c) (Supp.2004) ] tells us that if we're proceeding under [HRS § 571–22(a)] there are a number of factors that are to be considered.

And the first two factors, one, the seriousness of the alleged offense, and two, whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner, also, number three, whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted, all of those three factors require the Court to consider the facts, if you will, of the case. And I presume that that is the reason why the police report's being offered to the Court so the Court can see what are in effect the—the underlying facts of the case.

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]: And the Court's decision with respect to these factors is only going to be as good as the facts that the Court has before it. And I submit if we're not entitled to cross-examine with respect to what's contained in the police report, the Court is not getting the kinds of facts it needs to-to make its findings in light of those factors.

THE COURT: Mm-hmm. [Defense counsel], your-your statements are well taken and it is a tension that always runs through any waiver hearing, all waiver hearings. But the fact of the matter is that traditionally by case law and even by statute, the thrust of the waiver hearing is to focus on the minor, his condition and position right now, whether he is treatable by the Family Court.

The other piece of the tension is really the-when I say "judicial economy," folks, I'm not talking about time or speed. I mean, if there's something that this Court needs to do, we'll take all the time we need. But in-in waiver hearings it goes without saying that, you know, they're only brought where it's a serious, complicated offense.

And, frankly, if we were to be undisciplined about this and allow the underlying violation to be adjudicated at each waiver, one, it would not be economical, not in the sense of time but in the sense of preparation of counsel, preparation of a case, defense of the—the defendants.

All judges who do this waiver stuff, we're always balancing the tension and also balancing exactly what you bring up, [defense counsel], and that is—and you're totally correct—in the first three—three conditions that we must consider, we are talking about the underlying offense. But that—that is the judge's job to try to weigh this in light of all the other factors, including [HRS § 571–22(c)(8)], which pulls in the world which is all other relevant matters.

In this case, I do not believe that one, two, and three-or in considering one, two, and three that the Court-that it's imperative for the Court to be hearing so much of the underlying offense. That's my ruling. I'm barring-barring that. And the record should note that the witnesses were excused only upon the Court's instructions.

Any other preliminary matters?

[DPA]: Thank you, Your Honor, I don't think so.

THE COURT: Then we'll proceed with the proof.

[DPA]: Your Honor, at this time the State would like to move into evidence State's Exhibit number 1, for identification, which has been shown to [defense counsel] and is a copy of the Honolulu Police Department report number 00307035.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Your Honor, I'm objecting on the grounds that the report is hearsay and that I have not been allowed an opportunity to cross-examine any of the declarants regarding that report.

THE COURT: Court receives 1 over defense objection.

The family court waived its jurisdiction over Defendant, finding and concluding as follows:

1. Travis A. Limoz (hereinafter "Minor") was born on May 2, 1983 and was at least sixteen (16) years old but less than eighteen (18) years old on the date of the offense, which was on or about August 13, 2000;

2. Minor is charged with committing the offense of Murder in the Second Degree, which would constitute a felony if committed by an adult;

3. There is no evidence that Minor is committable to an institution for the mentally defective, or retarded or the mentally ill;

4. The minor is not treatable in any available institution or facility within the State designed for the care and treatment of children because there is not enough time and because of the history of the minor's treatment;

5. The likelihood of reasonable rehabilitation of the minor by the use of procedures, services, and facilities currently available to the Family Court is low;

6. The record and previous history of the minor, including previous contacts with the Family Court is relatively low, relative to other juveniles in Family Court;

7. The safety of the community requires that the minor be subject to judicial restraint for a period extending beyond the minor's minority;

8. The alleged offense is serious, greater weight being given to the offense as it is an offense against a person, and personal injury resulted;

9. The result of the alleged offense was violent and willful under [HRS § 571-22(c)(2)]; however, this Court makes no finding as to the minor's state of mind;

10. The result and circumstances of the alleged offense resulted in the death of Cecil Mosley;

11. The likelihood for adequate protection of the public if the Family Court does not waive jurisdiction is low, given the context of this case;

12. The physician-patient privilege and psychologist-patient privilege do not apply to the duration and number of instances of the minor's counseling, and this information was considered by the Court;

13. The physician-patient privilege does not apply to the minor being diagnosed with Tourette's Syndrome, and the Department of Education contacts in this regard;

14. The physician-patient privilege and the psychologist-patient privilege do apply to the minor's communications with physicians and psychologists, and the information in [Court Officer] Arlene O'Neill's report that is privileged was not considered by this Court;

15. Reports of Jason C. Glipa, M.D., including Dr. Glipa's opinions regarding the minor's prognosis, are based upon communications made by the minor and are privileged, and the aforesaid were not considered by this Court;

16. The psychological evaluation of Vijay K. Jain, Psy.D. dated October 14, 1998 was not considered by this Court.

17. There is enough evidence in the record, without considering any privileged information, to support waiver of jurisdiction in this matter.

THEREFORE IT IS HEREBY ORDERED that the Petition for Waiver of Jurisdiction filed on August 21, 2000 be and is hereby granted and the Court waives its original exclusive jurisdiction over Travis A. Limoz, born on May 2, 1983.

IT IS FURTHER ORDERED that Travis A. Limoz be transferred to the Criminal Division of the First Circuit Court for appropriate criminal proceedings.

### B. Waiver of Jury Trial.

Regarding the point of error attacking his waiver of jury trial, Defendant references the transcript of the July 23, 2001 jury waiver hearing in the circuit court:

THE COURT: Your name is Travis A. Limoz?

THE DEFENDANT: (Nods head.)

THE COURT: You have to answer out loud for the reporter.

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Twenty-eight [sic].

THE COURT: And how many years of schooling did you have?

THE DEFENDANT: Still attending school. This is my last year.

THE COURT: And you can read, write and understand English?

THE DEFENDANT: Yes.

THE COURT: Are you under the influence of alcohol or any other drugs today?

THE DEFENDANT: No.

THE COURT: Are you under treatment for any mental illness or emotional disability?

[DEFENSE COUNSEL]: Your Honor, actually, he is taking Clonadin [sic] and he is taking Zoloft for aggression. He's been for a while, and I have talked to him this morning and I believe his mind is clear.

THE COURT: Your mind is clear today?

THE DEFENDANT: Yes.

THE COURT: Your lawyer talked to you about going to trial before a jury and going to trial before a judge?

THE DEFENDANT: Yes.

THE COURT: He told you you have a constitutional right to have a trial by jury. You understand?

THE DEFENDANT: Yes.

THE COURT: And after talking to him, he told you the pros and cons of going to trial before a judge as opposed to going to trial before a jury?

THE DEFENDANT: Yes.

THE COURT: And after discussing with him, you've decided to waive jury trial; is that right?

THE DEFENDANT: (Nods head.) Yes.

THE COURT: And so you signed the waiver form?

THE DEFENDANT: Yes.

THE COURT: I find defendant has knowingly and voluntarily waived his right to trial by jury.

Sign the waiver form. We will give you the week of September 24th for jury-waived trial.

The waiver form referred to by the circuit court is a preprinted court form for a waiver of indictment and/or a waiver of trial by jury, and was signed by Defendant, his attorney and the circuit court judge. As completed, the form has a box checked off next to the statement: "I waive my right to trial by jury and consent to a trial by the Court without a jury." Attached to the waiver form is a second page containing a preprinted rendition of the rights pertaining to grand jury proceedings that a defendant waives by waiving indictment. However, the waiver form—as filed in the record—has no corresponding attachment for a defendant's jury waiver.

## II. Discussion.

### A. Waiver of Family Court Jurisdiction.

██ It is " 'beyond dispute that waiver of jurisdiction is a critically important action determining vitally important rights of the juvenile,' " *In re John Doe I*, 50 Haw. 620, 623, 446 P.2d 564, 567 (1968) (some internal quotation marks omitted) (quoting *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)), and that " 'there is no place in our system of law for reaching a result of such tremendous consequences without ceremony-without hearing, without effective assistance of counsel, without a statement of reasons.' " *John Doe I*, 50 Haw. at 623, 446 P.2d at 567 (quoting *Kent*, 383 U.S. at 554, 86 S.Ct. 1045).

██ However, a waiver proceeding "does not involve adjudication, or even consideration, of the guilt or innocence of the accused," *In re John Doe*, 57 Haw. 413, 414 n. 1, 558 P.2d 483, 484 n. 1 (1976); *see also John Doe*, 61 Haw. at 53, 594 P.2d at 1088 ("the purpose of a waiver hearing is not to determine whether the minor has committed—or even whether there is probable cause to believe that he has committed—the offenses alleged"), but is, instead, "primarily dispositional and essentially of the nature of the ordinary sentencing proceeding, so that the full criminal procedural protections appropriate to an adjudication of guilt do not apply." *Dinson*, 58 Haw. at 527, 574 P.2d at 124 (citation omitted). Indeed,

> For purposes of waiver, the charges against a minor are in actuality presumed to be true, and evidence may not ordinarily be admitted to prove the truth of the alle-

gations of criminal law violation. The ultimate concern in a waiver proceeding is not whether the minor committed the offenses alleged, but whether sufficient evidence has been adduced to justify waiver under the standards specified in HRS § 571–22 (1976).

*John Doe,* 61 Haw. at 53–54, 594 P.2d at 1088 (internal citation omitted). *See also In re John Doe,* 1 Haw.App. 611, 615, 623 P.2d 1262, 1264 (1981) ("the trial court assumes, for the purpose of the waiver hearing, that the alleged law violator has in fact committed the acts currently charged" (citation omitted)); HRS § 571–22 (Supp.2004) (referring, throughout, to the "alleged" offense).

■ The focus of a waiver hearing away from adjudication apparently stems, at least in part, from double jeopardy concerns: "The mere introduction of evidence for the purpose of showing by a preponderance that the minor committed the offenses alleged would cause jeopardy to attach." *John Doe,* 61 Haw. at 53, 594 P.2d at 1088 (citing *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975)).

As pointed out by defense counsel below, the supreme court applied the foregoing general principles in a similar case:

Appellant objects to the admission and use of the report of the first probation officer, as violative of Appellant's right to confront the witnesses against him, because the report purported to state as fact certain information derived by the probation officer from unidentified third parties and as to which the probation officer had no first-hand knowledge. What we have already said largely disposes of this question. We have characterized the waiver procedure as dispositional and have analogized it to the ordinary sentencing process. As we said in *State v. Kamae,* 56 Haw. 628, 637, 548 P.2d 632, 638 (1976), in purely ordinary sentencing where the judge is not concerned with determining guilt or the extent of criminality, "a sentencing court may acquire information about a defendant from any source, including any data contained in a presentence report, and utilize the same in the sentencing of a defendant without violating due process."

The procedural standards of *Kent* circumscribe the freedom of a family court judge to rely in a waiver proceeding upon such reports, by requiring that the reports be made available to counsel for the juvenile. In the present case the report was produced at the hearing and made a part of the record. Its author was placed on the stand for cross-examination by Appellant's counsel. Appellant had full opportunity to ascertain the sources of all factual statements in the report and to rebut the statements. Appellant does not complain of any lack of opportunity to call the informants who were the sources of the factual statements in the report. We see no lack of procedural fairness in the consideration of this report by the family court.

*Dinson,* 58 Haw. at 528–29, 574 P.2d at 123–24 (citations omitted).

■ For his appeal, and aside from mere aspirational contentions, Defendant seizes upon the penultimate sentence of the foregoing quote to argue that the *Dinson* court established a procedural right of the respondent in a waiver hearing to call, confront and cross-examine the percipient witnesses to the offense whose statements are contained in a police report admitted into evidence, a right denied him by the family court in this case. We disagree.

First, the report in *Dinson* was not a police report but a probation officer's report, which presumably addressed matters primarily dispositional and not adjudicative. Second, the sentence in *Dinson* Defendant brandishes, by its own terms addressed an issue not raised in the *Dinson* case, and thus appears to be dictum. In light of the general principles outlined above, we do not believe the supreme court wrote it to promulgate another general principle indiscriminately applicable. We do not foreclose the possibility that a waiver case may arise in which the family court would abuse its discretion, *State v. Smith,* 59 Haw. 456, 465–66, 583 P.2d 337, 343–44 (1978), by refusing the respondent's call of such witnesses. *See Dinson,* 58 Haw. at 527, 574 P.2d at 123 ("As in the case of sentencing, . . . a [waiver] decision may be overturned where it is clearly based on materially untrue or unreliable information.

*Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).”). But suffice it to say that in this case-in which the statements of the percipient witnesses were all more or less consistent with our brief summary of the incident, *supra,* and Defendant did not below and does not on appeal enlighten us as to what his cross-examination of the witnesses might have revealed-the family court did not abuse its discretion in waiving its jurisdiction over Defendant.

*B. Waiver of Jury Trial.*

██ Defendant avers that the jury waiver colloquy the circuit court conducted with him was inadequate, when viewed in light of the model colloquy described in *State v. Friedman,* 93 Hawai'i 63, 69, 996 P.2d 268, 274 (2000):

The Ninth Circuit noted that, to ensure a voluntary waiver, the district court should have directly informed the defendant that “(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial.” [*United States v. Duarte–Higareda,* 113 F.3d 1000, 1002 (9th Cir.1997) (citing *United States v. Cochran,* 770 F.2d 850, 853 (9th Cir. 1985)) ].

*Friedman,* 93 Hawai'i at 69, 996 P.2d at 274. *See also State v. Valdez,* 98 Hawai'i 77, 79, 42 P.3d 654, 656 (App.2002). Defendant complains that he was not “specifically informed by the circuit court that a jury is made up of twelve members of the community, that he may take part in selecting a jury, that a jury verdict must be unanimous, or that the court alone decides guilt or innocence.” Opening Brief at 27–28 (citation to the record omitted).

In *State v. Barros,* 105 Hawai'i 160, 95 P.3d 14 (App.2004), we encountered the same claim of inadequacy asserted over a jury waiver colloquy which was, if anything, even less formally compliant with the *Friedman* model than the one at issue here. *Id.* at 164, 95 P.3d at 18. There, we held that mere shortcomings in a jury waiver colloquy cannot alone carry the defendant's burden of “ ‘demonstrating by a preponderance of the evidence that his [on-the-record] waiver was involuntary.’ ” *Id.* at 169, 95 P.3d at 23 (original brackets omitted) (quoting *Friedman,* 93 Hawai'i at 69, 996 P.2d at 274). We explained:

Under *Friedman,* this is plainly insufficient. Barros “has not pointed to any facts contained in the record demonstrating that his oral waiver at his arraignment was not voluntary and knowing.” *Friedman,* 93 Hawai'i at 70, 996 P.2d at 275. He has not, for example, pointed to any facts in the record—other than the deficiencies he perceives in the district court's colloquy—which might indicate that his reiterated refusal of a jury trial was incompetent or coerced, or that he was mistaken or misled in his professed understanding of what a jury trial is, or that his jury waiver was otherwise not intelligently and voluntarily undertaken.

In the same vein, but closer to the true heart of *Friedman,* Barros has “failed to direct us to any ‘salient fact’ bearing upon his ability to understand his jury waiver,” *id.* (citation omitted), such as the defendant's lack of English in *Duarte–Higareda, id.* at 69, 996 P.2d at 274, “*that would have created the need for an extensive colloquy by the trial court,* and, thus, his argument is without merit.” *Id.* at 70, 996 P.2d at 275 (citation omitted; emphasis supplied). Such “salient facts” in the first instance, drive the inquiry on appeal as to whether a jury waiver colloquy was sufficient. It is not the other way around. *Id.* In the absence of such and under the totality of the circumstances of this case, the district court's colloquy was sufficient to obtain a valid jury waiver, and Barros' first point of error must fail.

*Barros,* 105 Hawai'i at 169–70, 95 P.3d at 23–24 (brackets and some bracketed material omitted).

Here, Defendant makes mere mention of “the fact that this case originated in the family court, the young age (18 years old) and experience of Appellant, and Appellant's limited background with the criminal justice

system." Opening Brief at 26 (footnote omitted). However, none of these factors, among "the totality of the circumstances of this case," *Barros,* 105 Hawai'i at 170, 95 P.3d at 24, can be a " 'salient fact' bearing upon [Defendant's] ability to understand his jury waiver, ... that would have created the need for an extensive colloquy by the trial court," *id.* at 169, 95 P.3d at 23 (citations, some internal quotation marks, emphasis and original brackets omitted), unless its particular "bearing upon [Defendant's] ability to understand his jury waiver" in this particular case is explained, *id.* at 169, 95 P.3d at 23 (citation and internal quotation marks omitted), something which Defendant on appeal does not deign to do. By the same token, Defendant's unadorned references to his "mental health issues"—whatever those mental health issues might be—and to "Clonadin [sic] and ... Zoloft"—whatever those medications and their psychotropic effects might be—are unavailing. Defendant also observes that "[e]ven Appellant's mother has previously noted that Appellant was easily confused." Opening Brief at 26. Defendant bases his observation on a colloquy that occurred at a hearing in family court:

> THE COURT: I believe that your son has a right to be here, and I don't need to be so efficient that we skip right over that right. I am frankly happy to postpone it if you think that that's something we should do.
>
> MS. LIMOZ: I don't think so. I think it would be just more confusing for him—
>
> THE COURT: Okay.
>
> MS. LIMOZ:—if he was here.

This does not amount to an assertion that Defendant was "easily confused." All in all, we conclude that the circuit court did not err in accepting Defendant's waiver of jury trial.

### III. Conclusion.

Accordingly, the August 22, 2002 judgment of the circuit court is affirmed.